**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------------

|  |  |
|---|---|
| YODI ZIKIANDA, as  Administrator of the Estate<br>of Irene Bamenga, | * **CIVIL ACTION NO.**<br>* **1:12-cv-1194 (TJM/RFT)** |
| Plaintiff, | * |
| -against- | * |
| COUNTY OF ALBANY, SHERIFF CRAIG APPLE, CORIZON, INC.,<br>SYED AZAZ HAIDER-SHAH, M.D., ANNA J. PAULINO, DEBRA C.<br>VOGEL, COUNTY OF ALLEGANY, SHERIFF RICK L. WHITNEY,<br>CHERYL RALYEA, DEBRA HARRINGTON, and CHRISTOPHER<br>DEPNER, M.D., | * **FIRST AMENDED**<br>* **COMPLAINT AND**<br>* **DEMAND FOR**<br>* **JURY TRIAL** |
| Defendants. | * |

---------------------------------------------------------------------------------

**INTRODUCTION**

1.      This is an action arising out of the death of plaintiff's decedent, Irene Bamenga,

as a result of the failure of the defendants to provide her with urgently needed medical care

and treatment following her detention by immigration officials and civil confinement at the

Allegany County Jail and, subsequently, at the Albany County Correctional Facility where she

was detained by United States Immigration and Customs Enforcement (hereinafter "ICE").

Irene Bamenga suffered from chronic congestive heart failure, a condition known to require

regular and adequate doses of life-sustaining medication, and to be manageable with such care.

Although defendants were informed of Irene Bamenga's condition by ICE officials, and her

medications were delivered to the defendants when she was placed in their custody, they failed

and refused to ensure that she was properly treated.  Their actions, both collectively and

individually, resulted in her untimely and unnecessary death.  Irene Bamenga had been taken into custody as the result of the capricious refusal of ICE officials to permit Bamenga voluntarily to leave the United States to return to her home in France.  While knowing that she was en route to France, had a ticket on a flight to Paris leaving that day and had no intention of remaining in the United States, ICE officials nevertheless concluded that she was attempting to enter the United States unlawfully and took her into custody so that she could be deported. While the formal immigration procedures leading to deportation slowly unfolded over the course of the next two weeks, Irene Bamenga was detained at two understaffed County jails in New York.  Had Bamenga simply been permitted to leave the United States, as arranged, the lethal tragedy which occurred in the Allegany County Jail and Albany County Correctional Facility -- which resulted in Ms. Bamenga's unnecessary and avoidable death -- would not have taken place.

2.    By this action plaintiff seeks both compensatory and punitive damages against the named defendants for conduct under color of law which, in addition to being tortious under common law, also deprived Irene Bamenga's rights secured under the Constitution and Laws of the United States, particularly under the provisions of the Fourteenth Amendment to the Constitution of the United States.

3.    One or more of the exceptions set forth in CPLR §1602 applies to this action or claim for damages, including, but not limited to, the exceptions set forth in CPLR §1602 (2) and (7).

**JURISDICTION AND VENUE**

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1332 and 1343.  This Court's supplemental jurisdiction, 28 U.S.C. § 1367, is also invoked to assert plaintiff's claims against the defendants of the torts of negligence and medical malpractice and for wrongful death under the laws of the state of New York and the Commonwealth of Massachusetts. The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00

5.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because some defendants reside in the Northern District of New York and all defendants are residents of the state of New York within the meaning of 28 U.S.C. § 1391; under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to plaintiff's claim occurred within the Northern District of New York; or, to the extent that venue is not proper under either 28 U.S.C. §§ 1391(b)(1) or (2), under 28 U.S.C. § 1391(b)(3),   because some or all defendants are subject to the personal jurisdiction of the court.

**PARTIES**

**Plaintiff**

6.      Plaintiff Yodi Zikianda (herein "Zikianda" or "Plaintiff") is an individual who at all times relevant was and is domiciled in Lynn, Essex County, Massachusetts.   Mr. Zikianda is the widower of the decedent, Irene Bamenga (hereinafter "Decedent" or "Irene Bamenga").  On or about the 14th day of September, 2011, Plaintiff, Yodi Zikianda, was duly appointed Administrator of the Estate of Irene Bamenga by the Essex County (Massachusetts) Probate and Family Court and he has duly qualified and is still acting as such Administrator.  Zikianda is

entitled to bring this action under New York Estates, Powers and Trusts Law §§ 11-3.2 et seq. and 5-4.1 and Massachusetts General Laws c. 229 §2, et seq.

**The Allegany County Defendants**

7.      Defendant County of Allegany is a municipal organization existing under and by virtue of the laws of the State of New York and is responsible for the policy, practice, procedure, supervision, implementation, and conduct of the County of Allegany's administrator, officers, agents, servants, and/or employees, including, but not limited to, those individuals employed at the Allegany County Jail (the "Allegany Jail").

8.      Defendant Rick L. Whitney (hereinafter "Sheriff Whitney") is the Sheriff of Allegany County and in that capacity has the power and the duties as provided by the Allegany County Charter and as otherwise provided by law.  As Sheriff of Allegany County, he is, and was at all times relevant to the allegations of this complaint, responsible for the administration of the Allegany Jail including without limitation the care, custody and control of immigration detainees housed at the Allegany Jail pursuant to agreement with ICE, the establishment of policies and procedures concerning management and operation of the Allegany Jail, and the appointment, training and supervision of all Allegany Jail personnel.  He maintains headquarters and his principal place of business at 4884 State Route 19, Belmont, New York 14813-9506. Defendant Whitney is sued in both his individual and official capacity as Sheriff of Allegany County.

9.      Defendant Debra Harrington (hereinafter "Harrington") is a licensed, registered nurse, who, at all relevant times was employed at the Allegany Jail and was responsible for the provision of medical care to and screening of ICE detainees with regard to their medical needs

and tuberculosis status.  On information and belief, Harrington resides in Scio, Allegany County, NY.

10.    Defendant Cheryl Ralyea (hereinafter "Ralyea") is a licensed, certified nurse practitioner, who, at all relevant times was employed at the Allegany Jail and was responsible for the provision of medical care to ICE detainees at the Allegany Jail. On information and belief, Ralyea resides in Belmont, Allegany County, NY.

11.    Defendant Christopher Depner, M.D. ("Dr. Depner") is a physician who, at all relevant times, was licensed to practice medicine by the State of New York and was responsible for the provision of medical care to ICE detainees at the Allegany Jail, and for the supervision of the provision of such care by medical staff including but not limited to Defendants Harrington and Ralyea. On information and belief, Dr. Depner resides in Wellsville, Allegany County, NY.

12.    Defendants, County of Allegany, Sheriff Whitney, Harrington, Ralyea and Dr. Depner, are hereinafter sometimes referred to collectively as "the Allegany County Defendants".

13.    Plaintiff has complied with the provisions of General Municipal Law 50-e, and more than thirty (30) days have elapsed since the service of Notices of Claim pursuant to Section 50-e of the General Municipal Law on County of Allegany and Sheriff Rick L. Whitney and adjustment or payment thereof has been neglected or refused by each of the foregoing.

### The Albany County Defendants

14.    Defendant County of Albany is a municipal organization existing under and by virtue of the laws of the State of New York and is responsible for the policy, practice, procedure, supervision, implementation, and conduct of the County of Albany's administrator,

officers, agents, servants, and/or employees, including, but not limited to, those individuals employed at the Albany County Correctional Facility (the "Albany Jail").

15.     Defendant Craig D. Apple (hereinafter "Sheriff Apple") was the acting Sheriff of the County of Albany  and is now the Sheriff of the County of Albany and in both those capacities has had, at all times relevant, the power and the duties as provided by the Albany County Charter and as otherwise provided by law.  As Sheriff or Acting Sheriff of Albany County, he is, and was at all times relevant to the allegations of this complaint, responsible for the administration of the Albany Jail including without limitation the care, custody and control of immigration detainees housed at the Albany Jail pursuant to agreement with ICE, the establishment of policies and procedures concerning management and operation of the Albany Jail and appointment, training and supervision of all Albany Jail personnel. Sheriff Apple maintains headquarters and his principal place of business at the County Courthouse, Albany, New York 12207. Defendant Apple is sued in his individual and official capacity.

16.     Defendant Corizon, Inc. (hereinafter "Corizon") is a Missouri corporation with its principal offices located at  105 Westpark Drive, Suite 200, Brentwood, Tennessee and its operational headquarters located at 12467 Olive Boulevard, St. Louis, Missouri  63141.  Corizon is the successor to Correctional Medical Services, Inc. and was created from the merger of Correctional Medical Services and PHS Correctional Healthcare.  On information and belief, Correctional Medical Services, Inc. or its successor in interest, Corizon, contracted with County of Albany and/or the Albany County Sheriff to provide medical services to inmates and ICE detainees housed at the Albany Jail at all times relevant to the dispute which is the subject of

this complaint.  Corizon regularly does business within the State of New York such that it is

reasonable for this Court to exercise jurisdiction over it.

17.     Defendant Anna J. Paulino (hereinafter "Paulino") is an individual and at all times

relevant hereto was a nurse practitioner licensed to practice nursing in the state of New York.

At all times relevant hereto, Paulino worked at the Albany County Correctional Facility,

providing medical services to inmates and federal immigration detainees at the correctional

facility.  On information and belief, at all times relevant, Paulino was employed by Corizon to

provide nursing care to inmates and federal immigration detainees held at the correctional

facility, and resided in Gansevoort, Saratoga County, NY.

18.     Defendant Debra C. Vogel (hereinafter "Vogel") is an individual and at all times

relevant hereto was a registered nurse licensed to practice nursing in the state of New York.  At

all times relevant hereto, Vogel worked at the Albany County Correctional Facility, providing

medical services to inmates and federal immigration detainees at the correctional facility.  On

information and belief, at all times relevant, Vogel was employed by Corizon to provide nursing

care to inmates and federal immigration detainees held at the correctional facility, and resided

in Latham, Albany County, NY.

19.     Syed Azaz Haider-Shah, M.D. (hereinafter "Dr. Shah") is a physician who, at all

relevant times, was licensed to practice medicine by the State of New York and was responsible

for the provision of medical care to ICE detainees at the Albany County Correctional Facility,

and for the supervision of the provision of such care by medical staff including but not limited

to Defendants Paulino and Vogel. On information and belief, at all times relevant hereto, Dr.

Shah was employed by Corizon acting within his authority as Corizon's agent and was a resident of New Hartford, Oneida County, New York.

20.    County of Albany, Sheriff Apple, Paulino, Vogel and Dr. Shah are sometimes referred to hereinafter as "the Albany County Defendants".

21.    Plaintiff has complied with the provisions of General Municipal Law 50-e, and more than thirty (30) days have elapsed since the service of Notices of Claim pursuant to Section 50-e of the General Municipal Law on County of Albany and Sheriff Craig D. Apple and adjustment or payment thereof has been neglected or refused by each of the foregoing.

### Color of Law

22.    Each and all of the acts of the defendants were done under the color and pretense of the statutes, ordinances, regulations, customs and uses of the State of New York and the Counties of Allegany and Albany and under the authority of their offices as Allegany and Albany County officers, agents, servants, and/or employees.

### FACTS COMMON TO ALL COUNTS

23.    On the afternoon of July 15, 2011, Irene Bamenga, a French citizen, accompanied by her husband, Plaintiff Yodi Zikianda and Irene's brother-in-law, Paul Kayembe, arrived at the Canadian customs station at the Peace Bridge border crossing near Buffalo, New York with the intention or traveling to Toronto's Pearson International Airport where she was to board a flight from Toronto to Paris that evening.  Although she held a valid French passport, Irene Bamenga was denied entry to Canada by Canadian customs officials, apparently on the basis of concern that she did not closely resemble her passport photograph, which had been taken at the time her passport was issued years earlier.

24.    After being denied entry to Canada, Irene Bamenga, Zikianda and Mr. Kayembe were directed to return to the United States.  On recrossing the Peace Bridge, they were stopped at the U.S. Customs checkpoint where they were met by ICE officers.  Notwithstanding that Irene Bamenga was attempting to leave the United States to return to France, and had an airline ticket for that evening, ICE officials determined that her visa was no longer valid and that she was unlawfully entering the United States.  The ICE officials then detained Irene Bamenga in order to commence deportation proceedings against her, intending to return her to France  -- her planned destination of that very evening.

25.    ICE does not operate a facility for holding immigration detainees in upstate New York.  Local jails and correctional facilities, operating under contract with ICE, are used to house immigration detainees in that area of the state.  At the time that Irene Bamenga was detained by ICE, ICE had agreements with county facilities in both Allegany and Albany counties to hold immigration detainees.  On information and belief, both the County of Allegany and the County of Albany are paid by the United States on a flat per diem, per detainee basis.

26.    After taking Irene Bamenga into custody, in the evening of Friday, July 15, 2011, ICE transported her to the Allegany Jail, where she was detained under the care and custody of Sheriff Whitney until July 21, 2011.  Thereafter, ICE transferred Bamenga to the Albany County Correctional Facility, where she was detained under the care and custody of Sheriff Apple from July 21, 2011 until July 27, 2011.  On that date, Irene Bamenga died as the direct and proximate result of the combined and separate medical malpractice and deliberate indifference of the Allegany and Albany Defendants to Irene Bamenga's serious medical needs.

27.     When Irene Bamenga was taken into ICE custody on July 15, 2011, ICE officials were informed by her and by her husband that she suffered from chronic congestive heart failure ("CHF") which required her to maintain an extensive regimen of medications in order to prevent serious illness and death.

28.     Congestive heart failure is a term used to describe the clinical syndrome of having heart function weakened -- compromised as a result of one of many causes -- such that the heart is unable to pump critically important oxygen and other nutrients to the body. A patient with CHF can be stabilized and lead a highly functioning life with the aid of cardiac medications. These medications act to strengthen the muscle of the heart, to prevent heart rhythm abnormalities, to normalize blood pressure and to maximize the body's circulation so that all the tissues and organs of the body receive adequate oxygen.

29.     It is essential to the successful management of a patient suffering from CHF that all medications be given in the prescribed dose and at the appropriate time intervals so that consistent blood levels of these critically important medications are maintained. Abrupt withdrawal of cardiac medications or sudden changes in dosages of the medications can quickly destabilize the heart function and lead to the rapid development of worsening heart failure, heart rhythm abnormalities and lack of adequate oxygenation.

30.     A patient who does not receive the medications prescribed and at appropriate dosing intervals may complain of palpitations, weakness, difficulty breathing and fainting.   Timely initiation of appropriate medications and intensive medical monitoring can reverse these symptoms. However, if left untreated, ultimately, heart failure may, as it did in this case, proceed to death.

31.     In preparing for her travel to France, Irene Bamenga and Zikianda carefully separated her required medication for three months into two containers labeled with her prescription regimen, leaving the prescription bottles behind.

32.     Irene Bamenga's medications included:

a.   Carvedilol (brand name Coreg) 12.5 mg, with instructions to take one tablet by mouth twice daily;

b.   Spironolactone (brand name Aldactone), 25 mg, with instructions to take one tablet by mouth twice daily;

c.   Digoxin (brand name Lanoxin), .25 mg, with instructions to take one tablet by mouth one time daily;

d.   Lisinopril (brand name Zestril),, 30 mg, with instructions to take one tablet by mouth one time daily;

e.   Furosemide (brand name Lasix), 40 mg, with instructions to take one tablet by mouth one time daily; and

f.   Aspirin 81 mg, with instructions to take one tablet by mouth one time daily.

It was critically important to management of her chronic CHF that Irene Bamenga timely received all of the foregoing medications in accord with her physician's instructions.

33.     At the time of her detention, ICE officials were provided by Irene Bamenga and Plaintiff with the two containers and the three-month supply of her Bamenga's prescription medications which Bamenga had intended to take with her to France.  Irene Bamenga and Plaintiff advised ICE officials that continued administration of her medication regimen was critical to her health.

34.     Upon information and belief, when ICE transferred Irene Bamenga to the custody of the County of Allegany and defendant Sheriff Whitney, ICE provided Bamenga's medications and the information that Bamenga suffered from chronic CHF to County of

Allegany and unknown agents and servants of defendant Sheriff Rick Whitney, including but not limited to defendants Harrington, Ralyea and Dr. Depner.

35.    Notwithstanding that the Allegany County defendants should have known and knew that Irene Bamenga's continued health and well-being required the uninterrupted administration of her prescribed medications, the Allegany County defendants failed, from July 15, 2011, until she was transferred from County of Allegany to the custody of the County of Albany, to provide her timely with appropriate and medically necessary doses of her medications in accord with Bamenga's physician's instructions.

36.    On information and belief, and evincing a deliberate indifference to Irene Bamenga's serious medical needs, Bamenga was denied _any_ of her prescribed medications from July 15, 2011 until July 18, 2011, notwithstanding that the Allegany County defendants should have known and knew that timely dose-appropriate administration of her medications were required to prevent Irene Bamenga from going into acute congestive heart failure and dying.

37.    Thereafter, on or about July 18, 2011, defendant Ralyea, who knew and should have known that it was essential to Irene Bamenga's health that she timely receive the prescribed dosages of each of her medications, evincing a deliberate indifference to Irene Bamenga's serious medical needs, and in violation of the applicable standard of care, failed to take necessary steps to ensure that she would receive her medications, and instead provided Bamenga with what defendant Ralyea considered to be "usual" dosages of only some of her medications.

38.    Ralyea is not a physician or cardiologist and made no effort to confirm that the regimen of medications she provided to Irene Bamenga was appropriate for a patient with her history and disease.  Moreover, Ralyea made no effort to reach Irene Bamenga's prescribing physician to confirm the medications and dosage regimen she required notwithstanding her awareness that in the absence of continued timely treatment with her medications Irene Bamenga was at risk of developing acute, life-threatening congestive heart failure.  In fact, the regimen of medications provided to Bamenga by Ralyea was not consistent with Irene Bamenga's prescribed regimen and caused or contributed to Irene Bamenga's development of acute congestive heart failure that resulted in her death on July 27, 2011, while under the care of the Albany County defendants.

39.    Between July 15, 2011 and July 21, 2011, in violation of the applicable standard of care and with deliberate indifference to Irene Bamenga's serious medical needs, Dr. Depner failed to intervene to ensure that Irene Bamenga received the medications she required, and failed to supervise Harrington and Ralyea to ensure that they provided Irene Bamenga with reasonably necessary medical care, including without limitation timely dose-appropriate medications for treatment of her chronic congestive heart failure.  Dr. Depner knew and should have known that interruption of Irene Bamenga's medication regimen would likely cause her to develop life-threatening acute congestive heart failure, yet took no steps to ensure that Bamenga received the life-saving treatment she required.

40.    Between July 15, 2011 and July 21, 2011, the Allegany County defendants failed and refused to provide Irene Bamenga with the timely and dose-appropriate medications she required to sustain her health and to avoid acute life-threatening congestive heart failure

notwithstanding Bamenga's repeated requests for her medication; notwithstanding that the

Allegany County defendants were in possession of the  medications which had been delivered

to the Allegany County defendants when ICE placed Irene Bamenga under the care and custody

of County of Allegany; and notwithstanding that the Allegany County defendants were aware

that for a patient like Irene Bamenga, deprivation of medication or changes in her medication

regimen were likely to cause Bamenga to develop acute life-threatening congestive heart

failure and increased the risk that Bamenga would experience a life-threatening arrhythmia.

       41.      Between July 15, 2011 and July 21, 2011, Irene Bamenga suffered excruciating

mental anguish and fear that the defendants' failure to administer her medications would lead

to her death.  At all times relevant, Irene Bamenga was conscious of the threat that absence of

her medications posed to her life.  Moreover, Irene Bamenga's worst fears began to be realized

while she was in the custody and under the care of the Allegany County defendants because

she began to experience the signs and symptoms of acute congestive heart failure, including

but not limited to shortness of breath, dizziness, and difficulty breathing.

       42.      As a direct and proximate result of the conduct of the Allegany County

defendants, Irene Bamenga was caused to develop acute congestive heart failure that led to

her death on July 27, 2011, while Irene Bamenga was in the custody of the Albany County

defendants.

       43.      On or about July 21, 2011, Irene Bamenga was transferred to the Albany County

Correctional Facility.  Her three-month supply of her medications were transferred to the

possession, custody and control of the Albany County defendants at the same time, and at all

times relevant were available to the Albany County defendants and could have been provided to Irene Bamenga in accord with her physician's instructions.

44.    On July 21, 2011 at 6:25 pm, following Irene Bamenga's transfer to the custody and control of the Albany County defendants, defendant Corizon, through its employees, agents or servants, including but not limited to defendant Vogel, recorded that Irene Bamenga had a history of congestive heart failure.  Notwithstanding their awareness of this diagnosis, defendants Corizon, Shah and Vogel made no effort to confirm Ms. Bamenga's medication regimen with her treating physicians or pharmacy.  Defendant Dr. Shah was consulted and prescribed a regimen of treatment for control of Irene Bamenga's heart condition.  This regimen, like that prescribed by Ralyea at the Allegany Jail, was inconsistent with the regimen that Irene Bamenga's treating physicians had determined were required for management of Irene Bamenga's heart condition.

45.    Dr. Shah took no steps to examine Ms. Bamenga or to determine what regimen of medications Irene Bamenga had been prescribed by her physicians despite the fact that he knew and should have known that abrupt changes to her medication regimen were likely to cause Bamenga to develop acute life-threatening congestive heart failure and increased the risk that Bamenga would experience a life-threatening arrhythmia.

46.    Although the rules of the Albany Jail required that new detainees at the facility be given a medical assessment on their admission to the facility, no adequate medical assessment of Irene Bamenga was performed on her arrival at the facility despite the knowledge of the Albany County defendants that Irene Bamenga suffered from a chronic and potentially life-threatening heart condition.

47.    In contravention of the applicable standard of care amounting to deliberate indifference to Irene Bamenga's serious medical needs, Corizon (through Correctional Medical Services, Dr. Shah , Vogel and Paulino) failed to take any steps to contact Irene Bamenga's treating physician's office to determine what regimen of medication her treaters had previously determined were necessary for management of Irene Bamenga's serious, chronic heart condition; failed to examine Irene Bamenga to determine what regimen of medications were indicated; and failed and neglected to treat Irene Bamenga with the regimen of medications which Irene Bamenga had in her possession when she was detained, and which were delivered to the Albany County defendants at the time Irene Bamenga was transferred to their custody and control.

48.    On July 25, 2011, Irene Bamenga twice made <u>written requests</u> to Corizon's medical staff at the Albany Jail, including but not limited to defendants Dr. Shah, Vogel and Paulino, that she be provided with correct dosages of her medications in accord with her prescribing physicians' instructions.

49.    Moreover, in her July 25, 2011 requests for medical services, Irene Bamenga informed Corizon's medical staff at the Albany Jail <u>in writing</u>, that she was suffering from "shortness of breath at night especially when laying down.  Palpitations when laying down. Dizziness upon standing up when palpitation and shortness of breath occur."  Each of the signs and symptoms reported by Bamenga to the Albany County Defendants were associated with the worsening of Bamenga's heart condition and the development of acute, life-threatening congestive heart failure.

50.    Additionally, and also on July 25, 2011, Irene Bamenga informed Corizon's medical staff at the Albany Jail in writing that, "I am not being given the full dosage of my medications.  Two of the six different meds are meant to be take(sic) twice a day and so far I have only be(sic) given 1 dosage in the morning.  The two medicine are spironolactone and carvedilol."

51.    Despite this information provided by their patient, Irene Bamenga, Corizon's medical staff at the Albany Jail, including but not limited to defendants Dr. Shah, Vogel and Paulino, took few and inadequate steps to manage Irene Bamenga's heart condition, all in violation of the applicable standard of care, and evincing deliberate indifference to Irene Bamenga's serious medical needs.

52.    On the morning of July 26, 2011, five (5) days after she arrived at the Albany facility, and a full eleven (11) days after Irene Bamenga was initially detained by ICE, she received a medical assessment at the Albany Jail.  The assessment was not performed in accord with the requirement that new detainees at the Albany Jail undergo a physical assessment on admission to the facility.  The assessment performed by Corizon's medical staff at the Albany Jail on July 26, 2011, including but not limited to defendant Paulino under the supervision of defendant Dr. Shah, noted Irene Bamenga's history of congestive heart failure, inexplicably indicated that Irene Bamenga should be seen again in ninety (90) days, and failed again to include any assessment of Irene Bamenga's heart condition or of her medication regimen, notwithstanding Irene Bamenga's written complaints of the previous day, July 25, 2011, indicating plainly that she was suffering from signs and symptoms of acute, life-threatening congestive heart failure.

53.     Between July 21, 2011 and July 27, 2011, Irene Bamenga suffered excruciating mental anguish and fear that the defendants' failure to administer her medications would lead to her death.  At all times relevant, Irene Bamenga was conscious of the threat that absence of her medications posed to her life.  Moreover, Irene Bamenga's worst fears began to be realized while she was in the custody and under the care of the Albany County defendants because the signs and symptoms of acute congestive heart failure, including but not limited to shortness of breath, dizziness, heart palpitations, and difficulty breathing continued and worsened while she was in the custody of the Albany County Defendants.

54.     Shortly after midnight on July 27, 2011, Irene Bamenga was found in her cell unresponsive.  The contemporaneous record created by the Albany County Defendants indicates that when she was found, Irene Bamenga had zero signs of life, no pulse, no respiration, her pupils were fixed and dilated, she had cold extremities, her body was stiff and her skin color was cyanotic.  These facts indicate that Irene Bamenga had died alone in her cell long before her body was discovered.  Shortly before 1:00 am on July 27, 2011, Irene Bamenga was transported to Memorial Hospital.  At 1:05 am Dr. Shah was notified of the "incident."  A Dr. Ericson pronounced her dead at 1:15 am.

55.     The Allegany and Albany Defendants were required, in accordance with New York Corrections Law and New York Codes, Rules and Regulations 9 CRR-NY 7010.1 et seq., to provide care for Irene Bamenga consistent with the applicable standard of care for her medical treatment upon her admission to the Allegany Jail and the Albany Jail.  The Defendants failed recklessly, and with deliberate indifference  and knowing that failure to manage appropriately Irene Bamenga's known chronic congestive heart failure was likely to lead to her death, to

18

comply with the applicable laws and regulations governing their conduct; with the standard of care applicable to each of the physician and nursing defendants; and with their obligation under the United States Constitution to provide Irene Bamenga with access to reasonable medical care while she was in the defendants' custody.

56.    While detained at the Allegany Jail and the Albany Jail, Irene Bamenga was under the care, custody and control of several medical and correctional staff members who are or were officers, agents, and/or employees of the Counties of Allegany and Albany, including, but not limited to, Dr. Depner, Cheryl Ralyea, Debra Harrington, Dr. Shah, Debra Vogel and Anna J. Paulino.

57.    While under the care, custody and control of defendants, Dr. Depner, Ralyea, Harrington, Dr. Shah, Vogel and Paulino, Sheriff Whitney and Sheriff Apple, Irene Bamenga was subjected to the following mistreatment: denial of her prescribed, medically necessary and life-sustaining prescription medications, denial of timely evaluation of her medical condition, denial of timely prescription drug administration, denial of adequate staffing of medical professionals so that her medical needs could be attended to, and denial of effective medical and supervisory observation, all amounting to a pattern, practice or policy of deliberate indifference to the serious medical needs of individuals such as the decedent, whom the defendants were charged with caring for while they are in defendants' custody.

58.    Pursuant to NY Corrections Law §500 et seq., New York Codes, Rules and Regulations Title 9, Part 7003.1 et seq., 7010.1 et seq., 7013.1 et seq., and 7041.1 et seq. and the United States Immigration and Customs Enforcement Bureau's detention standard § 4.3, the defendants, each individually and together, had an affirmative duty to ensure that Irene

Bamenga's ongoing, serious, and life-threatening medical condition was properly treated on a consistent and continuous basis within the standard of care due to any medical patient and/or detainee. The defendants, and each of them, failed and neglected to perform this obligation.

59.     The pattern, practice and policy of abuse that Irene Bamenga was subjected to violated Irene Bamenga's due process rights under the Fourteenth Amendment to the United States Constitution to be free from defendants' deliberate indifference to her serious medical needs.

60.     The mistreatment Irene Bamenga was subjected to violated N.Y. Corrections Law §500 et seq., New York Codes, Rules and Regulations Title 9, Part 7003.1 et seq., 7010.1 et seq., 7013.1 et seq., and 7041.1 et seq.  and the United States Immigration and Customs Enforcement's Bureau's policy on medical care of detainees, National Detention Standards, § 4.3.

61.     As a direct and proximate result of the foregoing, Plaintiff's decedent, Irene Bamenga was caused to die from acute congestive heart failure.

**COUNT I**
**WRONGFUL DEATH**
**DR. DEPNER, HARRINGTON, RALYEA, DR. SHAH, VOGEL AND PAULINO,**
**COUNTY OF ALLEGANY AND COUNTY OF ALBANY**

62.     Plaintiff repeats and realleges all consistent allegations of paragraphs 1-61, as if each were set forth here in full.

63.     During the period of her confinement, Irene Bamenga was a patient of Defendants, Dr. Depner, Harrington, Ralyea, Dr. Shah, Vogel and Paulino, and each of them.

64.     Defendants, Dr. Depner, Harrington, Ralyea, Dr. Shah, Vogel and Paulino, and each of them departed from the applicable standard of care in their treatment of Irene

Bamenga by, among other things, failing to ensure that Irene Bamenga's regimen of life-preserving medications were continued timely and in appropriate dosages during her detention at the Allegany Jail.

65.     The conduct of Defendants, Dr. Depner, Harrington, Ralyea, Dr. Shah, Vogel and Paulino, and each of them was a substantial cause of Irene Bamenga's injuries, pain and suffering and death described herein.

66.     At all times relevant, Dr. Depner, Harrington, Ralyea were the employees or agents of the County of Allegany, acting within the course and scope of their employment.

67.     At all times relevant, Dr. Shah, Vogel and Paulino were the employees or agents of the County of Albany, acting within the course and scope of their employment.

68.     On or about July 27, 2011, as the direct and proximate result of the wrongful conduct of Defendants, Dr. Depner, Harrington, Ralyea, Dr. Shah, Vogel and Paulino, the decedent, Irene Bamenga, suffered grievous mental and physical anguish and died while in the custody of County of Albany in the State of New York.

69.     By reason of all of the foregoing, the Plaintiff's Decedent, Irene Irene Bamenga, was caused to and did sustain serious personal injuries and death.

70.     The personal injuries and death sustained by decedent Irene Irene Bamenga resulted from and were caused solely by the negligence of the Defendants, Dr. Depner, Harrington, Ralyea, Dr. Shah, Vogel and Paulino, and without any negligence on the part of the Plaintiff or Decedent contributing thereto.

71.     As a result of the Defendants' negligence, the Decedent, Irene Bamenga, suffered serious injuries and pain from the time of the Defendants' negligence to the time of

her death, which was caused by the Defendants' negligence in treating her known medical conditions, and her injuries were permanent and fatal.

72.     Irene Bamenga's personal injuries, caused by the defendants' negligence, at the time of her death, gave rise to a cause of action that could have been maintained at her death if Irene Bamenga had not died.

73.     By reason of the foregoing, Plaintiff and Plaintiff's Decedent have been damaged in a sum of money having a present value in an amount in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs .

### COUNT II
### SURVIVAL ACTION, CONSCIOUS PAIN AND SUFFERING
### DR. DEPNER, HARRINGTON, RALYEA, DR. SHAH, VOGEL AND PAULINO,
### COUNTY OF ALLEGANY AND COUNTY OF ALBANY

74.     Plaintiff repeats and realleges all consistent allegations of paragraphs 1-73, as if each were set forth here in full.

75.     Irene Bamenga was conscious during her detention at the Allegany Jail and the Albany Jail from July 15, 2011 to and including the evening of July 26, 2011, prior to her death due to the negligence and deliberate indifference to Irene Bamenga's serious medical needs of the defendants, Dr. Depner, Harrington, Ralyea, Dr. Shah, Vogel and Paulino.

76.     Irene Bamenga suffered pain, shortness of breath, dizziness and palpitations due to the defendants' negligent withholding of her proper doses of medication to treat her congestive heart failure.

77.     Irene Bamenga suffered excruciating mental pain and anguish over the period July 15, 2011 up to and including the evening of July 26, 2011, stemming from her acute awareness that in the absence of the continued timely administration of her life-preserving

22

medications, she, more likely than not, was going to develop acute congestive heart failure which would lead to her death.

78.     By reason of the foregoing, Plaintiff's decedent was damaged in a sum of money having a present value in an amount in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

**COUNT III**
**42 U.S.C. §1983**
**DR. DEPNER, HARRINGTON, RALYEA, DR. SHAH, VOGEL AND PAULINO,**
**DELIBERATE INDIFFERENCE TO IRENE BAMENGA'S SERIOUS MEDICAL NEEDS**

79.     Plaintiff repeats and realleges all consistent allegations of paragraphs 1-78, as if each were set forth here in full.

80.     Over the period July 15 through July 21, 2011, while Irene Bamenga was in the custody and control of the Allegany County defendants, defendants Harrington, Ralyea and Dr. Depner failed and refused to ensure that Irene Bamenga was timely provided with medications necessary to control and manage Irene Bamenga's chronic congestive heart failure notwithstanding that said defendants knew and should have known that in the absence of timely administration of her prescribed medications in the correct dosages, Irene Bamenga faced a substantial risk of developing uncontrolled and uncontrollable acute congestive heart failure that would be life-threatening.

81.     Over the period July 21 through July 27, 2011, while Irene Bamenga was in the custody and control of the Albany County defendants, defendants Dr. Shah, Vogel and Paulino failed and refused to ensure that Irene Bamenga was timely provided with medications necessary to control and manage Irene Bamenga's chronic congestive heart failure notwithstanding that said defendants knew and should have known that in the absence of

timely administration of her prescribed medications in the correct dosages, Irene Bamenga faced a substantial risk of developing uncontrolled and uncontrollable acute congestive heart failure that would be life-threatening.

82.    Defendants, Harrington, Ralyea, Dr. Depner, Dr. Shah, Vogel and Paulino's knowing failure to timely perform an assessment of Irene Bamenga's need for her medications; failure to take any steps to confirm with Irene Bamenga's physicians what medications she required; failure to timely take any steps to consult with a cardiologist or other internal medicine physician qualified to manage patients with chronic congestive heart failure; failure to consult with Plaintiff to determine what dosages of what medications Irene Bamenga's physicians had prescribed for her; and failure to timely provide Irene Bamenga with the prescribed dosages of each of her medications all amounted to deliberate indifference to Irene Bamenga's serious medical needs, resulting in Irene Bamenga's unnecessary and completely avoidable death on July 27, 2011.

83.    The conduct of Defendants, Harrington, Ralyea, Dr. Depner, Dr. Shah, Vogel and Paulino, in failing to provide treatment for Irene Bamenga's serious medical needs was willful and reckless and done with a callous disregard for Irene Bamenga's rights.

84.    The conduct of Defendants, Harrington, Ralyea, Dr. Depner, Dr. Shah, Vogel and Paulino, denied Bamenga the right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.

85.    By reason of the foregoing, Plaintiff and Plaintiff's Decedent were damaged in an amount to be determined at trial together with costs and disbursements of this action and with such other and further relief as the Court may deem just and proper.

**COUNT IV**
**42 U.S.C. §1983**
**DEFENDANT CORIZON -- POLICY OR PRACTICE OF**
**DELIBERATE INDIFFERENCE TO DETAINEES' SERIOUS MEDICAL NEEDS**

86.     Plaintiff repeats and realleges all consistent allegations of paragraphs 1-85, as if each were set forth here in full.

87.     Over the period July 21 through July 27, 2011, while Irene Bamenga was in the custody and control of the Albany County defendants, Defendant Corizon failed and refused to ensure that Irene Bamenga was timely provided with medications necessary to control and manage Irene Bamenga's chronic congestive heart failure notwithstanding that said defendant knew that in the absence of timely administration of her prescribed medications in the correct dosages, Irene Bamenga faced a substantial risk of developing uncontrolled and uncontrollable acute congestive heart failure that would be life-threatening.

88.     At the time that Irene Bamenga was detained at the Albany Jail and was dependent on Corizon to meet her need for medical care and treatment, it was the policy and practice of Corizon to limit, as a cost-saving measure, the medical care available to the detainees under its care.  This included, without limitation, limiting supervision by a licensed physician of Corizon's medical staff at the Albany Jail, limiting the number of medical staff available to provide services to detainees, limiting patient access to direct care by a licensed physician, and limiting access to medical services and medical interventions generally.

89.     Defendant, Corizon's knowing failure to timely perform an assessment of Irene Bamenga's need for her medications; failure to take any steps to confirm with Irene Bamenga's physicians what medications she required; failure to timely take any steps to consult with a cardiologist or other internal medicine physician qualified to manage patients with chronic

congestive heart failure; failure to consult with Plaintiff to determine what dosages of what medications Irene Bamenga's physicians had prescribed for her; and failure to timely provide Irene Bamenga with the prescribed dosages of each of her medications all amounted to deliberate indifference to Irene Bamenga's serious medical needs.

90.    As a direct and proximate result of the policies and practices of Corizon, Irene Bamenga was caused to die on July 27, 2011.

91.    The conduct of Defendant Corizon as concerned Irene Bamenga  amounted to a custom, policy or practice of minimizing, to the fullest extent possible, the amount of medical care and intervention Corizon provides to inmates and detainees in order to maximize the net revenues realized by Corizon from the provision of medical care to inmates and detainees at facilities including but not limited to the Albany County Correctional Facility under Corizon's contract with County of Albany.

92.    The conduct of Defendant Corizon denied Irene Bamenga the right to Due Process guaranteed by the Fourteenth Amendment to the United States Constitution.

93.    The conduct of the Defendant Corizon was reckless and demonstrates a callous disregard for Irene Bamenga's federally protected constitutional right not to be subject to the defendants' deliberate indifference to Irene Bamenga's serious medical needs while she was a civil detainee in the custody of County of Albany and Sheriff Apple.

94.    By reason of the foregoing, Plaintiff and Plaintiff's Decedent were damaged in an amount to be determined at trial together with costs and disbursements of this action and with such other and further relief as the Court may deem just and proper.

**COUNT V**
**42 U.S.C. §1983**
**DEFENDANTS COUNTY OF ALLEGANY and SHERIFF WHITNEY**
**POLICY OR PRACTICE OF DELIBERATE INDIFFERENCE TO**
**DETAINEES' SERIOUS MEDICAL NEEDS**

95.     Plaintiff repeats and realleges all consistent allegations of paragraphs 1-94, as if each were set forth here in full.

96.     At the time that Irene Bamenga was detained at the Allegany Jail and was dependent on Allegany County and Sheriff Whitney to meet her need for medical care and treatment, it was the policy and practice of Allegany County and Sheriff Whitney to limit the medical care available to the detainees at the Allegany Jail.  This included, without limitation, limiting supervision by a licensed physician of the Allegany Jail's medical staff, limiting the number of medical staff available to provide services to detainees, limiting patient access to direct care by a licensed physician, and limiting access to medical services and medical interventions generally.

97.     Defendants, County of Allegany and Sheriff Whitney, systematically failed and refused to provide medically necessary health care and medications to individuals such as the decedent, including but not limited to: necessary and adequate emergency treatment; necessary and adequate individualized treatment regimes; proper staffing of on-call doctors and nurses; proper diagnosis and prescription of necessary and life-saving medications within an appropriate window of time; necessary monitoring of physically ill inmates; and necessary and adequate follow-up treatment and monitoring.

98.     By reason of these systematic policies, practices and procedures, defendants, County of Allegany and Sheriff Whitney, violated the right of the decedent to be free from

deliberate indifference to her serious medical needs as guaranteed by the Fourteenth Amendment to the United States Constitution.

99.     As a matter of policy, practice and procedure, defendants, County of Allegany and Sheriff Whitney, with deliberate indifference, knowingly failed to ensure that Irene Bamenga was provided with the medications and treatment necessary to manage her known condition of chronic congestive heart failure and to treat and prevent the worsening of decedent's medical illness, leading to Irene Bamenga's death.  As a matter of policy, practice and procedure and with deliberate indifference, defendants, County of Allegany and Sheriff Whitney, failed to provide, or failed to ensure that others provided, Irene Bamenga with adequate medication, medical supervision and medical treatment, which conduct directly and proximately caused Irene Bamenga's conscious pain and suffering and death.

100.     The defendants, County of Allegany and Sheriff Whitney, failed to properly staff, supervise and train those individuals assigned to the medical facilities of the Allegany Jail and should have known and knew that defendants, Dr. Depner, Harrington and Ralyea, were failing to provide appropriate medical treatment for those inmates and detainees, including the decedent, Irene Bamenga, who were known to suffer from medical conditions which, if not treated on a consistent basis, were likely to lead to dire outcomes, including death.

101.     The defendants, County of Allegany and Sheriff Whitney, failed to ensure that adequate oversight and medical services were available for medically sensitive detainees such as Irene Bamenga; failed to post or have on call appropriate medical staff within sufficient proximity of medically sensitive detainees to permit said staff to appropriately monitor such detainees, so that timely, direct life-saving interventions could be implemented to avoid death

and serious injury to such detainees; and failed to adequately train, supervise and inform correctional staff including those individuals working at the Allegany Jail about the standard procedures for United States Immigration Customs and Enforcement detainees; all manifesting deliberate indifference of these known risks to the health and safety of detainees with sensitive medical conditions and directly and proximately resulting in a violation of Irene Bamenga's rights under the Fourteenth Amendment to the United States Constitution.

102.     The conduct of the County of Allegany and Sheriff Whitney was reckless and demonstrates a callous disregard for Irene Bamenga's federally protected constitutional right not to be subject to the defendants' deliberate indifference to Irene Bamenga's serious medical needs while she was a civil detainee in their custody.

103.     By reason of the foregoing, Plaintiff and Plaintiff's Decedent were damaged in an amount to be determined at trial together with costs and disbursements of this action and with such other and further relief as the Court may deem just and proper.

**COUNT VI**
**42 U.S.C. §1983**
**DEFENDANTS COUNTY OF ALBANY and SHERIFF APPLE**
**POLICY OR PRACTICE OF DELIBERATE INDIFFERENCE TO**
**DETAINEES' SERIOUS MEDICAL NEEDS**

104.     Plaintiff repeats and realleges all consistent allegations of paragraphs 1-103, as if each were set forth here in full.

105.     At the time that Irene Bamenga was detained at the Albany Jail and was dependent on Albany County and Sheriff Apple to meet her need for medical care and treatment, it was the policy and practice of Albany County and Sheriff Apple to limit the medical care available to the detainees at the Albany Jail.  This included, without limitation,

limiting supervision by a licensed physician of the Albany Jail's medical staff, limiting the number of medical staff available to provide services to detainees, limiting patient access to direct care by a licensed physician, and limiting access to medical services and medical interventions generally.

106.    Defendants, County of Albany and Sheriff Apple, systematically failed and refused to provide medically necessary health care and medications to individuals such as the decedent, including but not limited to: necessary and adequate emergency treatment; necessary and adequate individualized treatment regimes; proper staffing of on-call doctors and nurses; proper diagnosis and prescription of necessary and life-saving medications within an appropriate window of time; necessary monitoring of physically ill inmates; and necessary and adequate follow-up treatment and monitoring.

107.    By reason of these systematic policies, practices and procedures, defendants, County of Albany and Sheriff Apple, violated the right of the decedent to be free from deliberate indifference to her serious medical needs as guaranteed by the Fourteenth Amendment to the United States Constitution.

108.    As a matter of policy, practice and procedure, defendants, County of Albany and Sheriff Apple, with deliberate indifference, knowingly failed to ensure that Irene Bamenga was provided with the medications and treatment necessary to manage her known condition of chronic congestive heart failure and to treat and prevent the worsening of decedent's medical illness, leading to Irene Bamenga's death.  As a matter of policy, practice and procedure and with deliberate indifference, defendants, County of Albany and Sheriff Apple, failed to provide, or failed to ensure that others provided, Irene Bamenga with adequate medication, medical

supervision and medical treatment which conduct directly and proximately caused Irene
Bamenga's conscious pain and suffering and death.

109.    County of Albany and Sheriff Apple, failed to properly staff, supervise and train
those individuals assigned to the medical facilities of the Albany Jail and should have known and
knew that defendants, Corizon, Dr. Shah, Vogel and Paulino, were failing to provide appropriate
medical treatment for those inmates and detainees, including the decedent, Irene Bamenga,
who were known to suffer from medical conditions which, if not treated on a consistent basis,
were likely to lead to dire outcomes, including death.

110.    County of Albany and Sheriff Apple, failed to ensure that adequate oversight and
medical services were available for medically sensitive detainees such as Irene Bamenga; failed
to post or have on call appropriate medical staff within sufficient proximity of medically
sensitive detainees to permit said staff to appropriately monitor such detainees, so that timely,
direct life-saving interventions could be implemented to avoid death and serious injury to such
detainees; and failed to adequately train, supervise and inform correctional staff including
those individuals working at the Albany Jail about the standard procedures for ICE detainees, all
manifesting deliberate indifference of these known risks to the health and safety of detainees
with sensitive medical conditions and directly and proximately resulting in a violation of Irene
Bamenga's rights under the Fourteenth Amendment to the United States Constitution.

111.    The conduct of the County of Albany and Sheriff Apple and was reckless and
demonstrates a callous disregard for Irene Bamenga's federally protected constitutional right
not to be subject to the defendants' deliberate indifference to Irene Bamenga's serious medical
needs while she was a civil detainee in their custody.

112.     By reason of the foregoing, Plaintiff and Plaintiff's Decedent were damaged in an amount to be determined at trial together with costs and disbursements of this action and with such other and further relief as the Court may deem just and proper.

**COUNT VII**
**THIRD PARY BENEFICIARY – ICE**

113.     Plaintiff repeats and realleges all consistent allegations of paragraphs 1-112, as if each were set forth here in full.

114.     At all times relevant hereto, County of Allegany and County of Albany were parties to contracts with ICE for the provision of services to ICE detainees.

115.     Pursuant to their contracts, County of Allegany and County of Albany each agreed to provide medical services to the ICE detainees placed in their custody in accord with standards promulgated by ICE for the care and maintenance of ICE detainees and in accord with applicable law.

116.     ICE detainees, including Irene Bamenga, were intended third-party beneficiaries of the contracts between ICE and the Counties of Allegany and Albany.

117.     Both County of Allegany and County of Albany breached their agreements with ICE by the manner in which they provided medical care to ICE detainees in their custody, including Irene Bamenga, all as aforesaid.

118.     By reason of the foregoing, Plaintiff and Plaintiff's Decedent were damaged in an amount to be determined at trial together with costs and disbursements of this action and with such other and further relief as the Court may deem just and proper.

**COUNT VIII**
**THIRD PARY BENEFICIARY – CORIZON**

119.    Plaintiff repeats and realleges all consistent allegations of paragraphs 1-118, as if each were set forth here in full.

120.    At all times relevant hereto, Corizon and County of Albany were parties to a contract under which Corizon was to provide medical services to ICE detainees held at the Albany Jail.

121.    Pursuant to its contract, Corizon agreed to provide medical services to the ICE detainees at the Albany Jail in accord with standards promulgated by ICE for the care and maintenance of ICE detainees and in accord with applicable law.

122.    ICE detainees, including Irene Bamenga, were intended third-party beneficiaries of the contract between Corizon and the County and Albany.

123.    Corizon breached its agreement with the County of Albany by the manner in which it provided medical care to ICE detainees in their custody, including Irene Bamenga, all as aforesaid.

124.    By reason of the foregoing, Plaintiff and Plaintiff's Decedent were damaged in an amount to be determined at trial together with costs and disbursements of this action and with such other and further relief as the Court may deem just and proper.

**JURY CLAIM**

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

**WHEREFORE**, the plaintiff, Yodi Zikianda, as Administrator and personal representative of the Estate of Irene Irene Bamenga prays that this Honorable Court:

1.    Accept jurisdiction over this case;

33

2.   Impanel a jury to hear and decide this matter;

3.   Award Plaintiff full and fair compensatory damages in a sum of money
     having a present value in an amount in excess of seventy-five thousand
     dollars ($75,000.00), exclusive of interest against all defendants and
     punitive damages against all individual defendants;

4.   Award Plaintiff reasonable costs of this litigation, including attorneys'
     and expert's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205; and

5.   Order any other relief it deems just and proper.

Dated: March 11, 2012

**PLAINTIFF YODI ZIKIANDA,**
Administrator of the Estate of Irene Bamenga,
by his attorneys,
**MACDONALD ROTHWEILER EISENBERG LLP**

/s/  Michael D. Lurie
_____
By:  Michael D. Lurie, Esq.
USDC NDNY Bar Roll # 517717
mlurie@mrelegal.com
Alex H. MacDonald, Esq. (*pro hac vice*)
amacdonald@mrelegal.com
Atty. Rebecca G. Robertson (*pro hac vice*)
rrobertson@mrelegal.com
One Bowdoin Square
Boston, MA  02114
Tel:  617-747-7550
Fax:  617-747-7551

and

John Reinstein (*pro hac vice*)
jreinstein@gmail.com
51 Abbottsford Road
Brookline, MA  02446
617-515-7986

and

John K. Powers, Esq
USDC NDNY Bar Roll # 102384
**POWERS & SANTOLA, LLP**
Attorneys for Plaintiff
Office and P.O. Address

39 North Pearl Street
Albany, NY 12207-2785
Phone: (518) 465-5995
Fax: (518) 426-4012
E-mail: **jpowers@powers-santola.com**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

| | |
|---|---|
| YODI ZIKIANDA, as Administrator of the Estate of Irene Bamenga, | * |
| | * **CIVIL ACTION NO.** |
| | * **1:12-cv-1194 (TJM/RFT)** |
| Plaintiff, | * |
| | * |
| | * |
| -against- | * |
| | * **CERTIFICATE OF** |
| COUNTY OF ALBANY, SHERIFF CRAIG APPLE, | * **SERVICE** |
| CORIZON, INC., SYED AZAZ HAIDER-SHAH, | * |
| M.D., ANNA J. PAULINO, COUNTY OF | * |
| ALLEGANY, SHERIFF RICK L. WHITNEY, | * |
| CHERYL RALYEA, DEBRA HARRINGTON, and | * |
| CHRISTOPHER DEPNER, M.D., | * |
| | * |
| Defendants. | * |
| | * |

-----------------------------------------------------------------

I hereby certify that on March 15, 2013, I electronically filed the foregoing FIRST AMENDED COMPLAINT AND JURY CLAIM with the Clerk of the Northern District Court of New York using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

Alex H. MacDonald amacdonald@mrelega.com
Andrew L. McNamara amcnamara@thuillezford.com
Danielle H. Garten-Koch dkoch@mooclaw.com
Donald P. Ford, Jr. dford@thuillezford.com, tkoonz@thuillezford.com
James M. Skelly jmskelly@mooclaw.com
John C. Reinstein jcreinstein@gmail.com, kahazen@gmail.com
John K. Powers jpowers@powers-santola.com, lhayman@powers-santola.com, tmcmahon@powers-santola.com
Lia B. Mitchell lmitchell@bsmhlawfirm.com, baston@bsmhlawfirm.com
Marylou K. Roshia mroshia@damonmorey.com, bfalcone@damonmoery.com
Michael D. Lurie mlurie@mrelegal.com, dnearis@mrelegal.com
Michael J. Keane mkeane@colucci-gallaher.com, burban@colucci-gallaher.com
Nancy Gertner ngertner@law.harvard.edu
Rebecca A.G. Robertson rrobertson@mrelegal.com, dnearis@mrelegal.com
Thomas J. Mortati tom@bsmhlawfirm.com

_/s/ Michael D. Lurie_____
Michael D. Lurie